United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET E. LARSON, AS TRUSTEE OF THE LARSON FAMILY REVOCABLE TRUST A, and MARINE E. NEAR, AS TRUSTEE OF THE JANET E. LARSON INSURANCE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>CYNTHIA H. SPEETJENS, FRAZER DAVIDSON P.A., T. ROE FRAZER II, JOHN DAVIDSON and DOES 1-100,<br><br>Defendants. | No. C 05-3176 SBA<br><br>**ORDER** |

This matter comes before the Court on defendant Cynthia H. Speetjens' Motion to Compel Arbitration or Alternatively for Immediate Trial on the Issue of Arbitrability Pursuant to 9 U.S.C. § 4; and Motion to Stay Pursuant to 9 U.S.C. § 3 [Docket No. 71].[1] Having read and considered the arguments presented by the parties in their moving papers, the Court finds this matter appropriate for disposition without a hearing. The Court HEREBY GRANTS defendant Cynthia H. Speetjens' Motion to Compel Arbitration and Motion to Stay.

**BACKGROUND**

**A.    Facts**

This is a legal malpractice action filed against defendants Cynthia H. Speetjens, Frazer Davidson, P.A., T. Roe Frazer II, John Davidson (collectively, "Defendants") and Does 1-100 by

---

[1] Defendants Frazer Davidson, P.A., T. Roe Frazer II, and John Davidson join in defendant Cynthia H. Speetjens' Motion.

plaintiffs Janet E. Larson, as trustee of the Larson Family Revocable Trust A, and Marnie E. Near as trustee of the Janet E. Larson Insurance Trust (collectively, "Plaintiffs").[2]  Plaintiffs allege that in 1999, Larson retained an investment advisor, Michael Kimsey, to help her with an estate plan, a financial plan and an investment plan. Kimsey recommended that Larson purchase a $10 million insurance policy and create a life insurance trust to hold the policy for the benefit of Larson's two children, including plaintiff Marnie E. Near ("Near"). First Amended Complaint ("FAC") at ¶ 11. Larson followed Kimsey's recommendation. Two years later, based on Kimsey recommendation, Larson replaced the life insurance policy with a new policy. *Id.* at ¶ 15(C).

In 2002, Larson became dissatisfied with Kimsey's advice with respect to the insurance policies. *Id.* at ¶ 20. She decided to bring an action against Kimsey. A mutual acquaintance recommended that Larson hire defendant Frazer Davidson P.A. law firm ("Frazer Davidson"). Either in late 2003 or early 2004, Larson was put in contact with Defendants. *See* Declaration of Cynthia H. Speetjens ("Speetjens Decl.") at ¶ 4; Declaration of Janet E. Larson ("Larson Decl.") at ¶ 7. Larson spoke with defendant Cynthia H. Speetjens ("Speetjens"), an associate of Frazer Davidson. On or about March 8, 2004, Larson signed a contract drafted by Frazer Davidson, which included an arbitration clause.[3] *See* Speetjens Decl., Ex. A. Plaintiffs allege that Larson signed the contract only in her individual capacity, and not as a trustee. *See* FAC at ¶ 21. The contract simply refers to "Janet E. Larson" as a client. *See* Speetjens Decl., Ex. A. Plaintiffs further allege that Frazer Davidson and defendants T. Roe Frazer II, and John Davidson entered into an oral or implied

---

[2] Initially, the action was brought by plaintiff Janet E. Larson ("Larson) individually and as a trustee. Larson dismissed herself from the action in her individual capacity on October 28, 2005. Larson remains in the action in her representative capacity as a trustee. Where the distinction between Larson in her individual capacity and Larson in her representative capacity is necessary, the Court will refer to "Larson-individual" and "Larson-trustee."

[3] The arbitration clause provides, in pertinent part:
Any and all disputes and/or controversies relating to FRAZER DAVIDSON, p.a.'s or associated counsel's representation shall be resolved solely and exclusively by arbitration. . . . The arbitration shall be conducted in Hinds County, Mississippi. The powers and rulings of the arbitrators shall be exercised by a majority of their numbers. The rulings of the majority of arbitrators shall be binding on CLIENT and our Law Firm to the same extent that a jury verdict would be binding on CLIENT and our Law Firm. Thus, CLIENT and our Law Firm agree that the arbitrators rulings may be enforced and/or appealed in Hinds County circuit court and applicable appellate courts to the same extent that a Hinds County jury verdict can be enforced and/or appealed. . . ." Speetjens Decl., Ex. A at ¶ 5; Ex. B at ¶ 5.

contract with the Larson Family Revocable Trust A and the Janet E. Larson Insurance Trust (collectively, the "Trusts"). *See* FAC at ¶ 21.

In October 2004, Speetjens resigned from Frazer Davidson and started her own law practice. FAC at ¶ 23. Larson decided to retain Speetjens to represent her in relation to her potential claims against Kimsey. Larson and Speetjens then entered into a written agreement, which was almost identical to the Frazer Davidson one and contained an identical arbitration clause (collectively, the "Agreements"). Plaintiffs allege that Larson signed the agreement only in her individual capacity and not as a trustee.[4] The agreement does not elaborate. It simply refers to "Janet E. Larson" as a client. *See* Speetjens Decl., Ex. B. Larson alleges that the Trusts entered into an oral or implied agreement with Speetjens. FAC at ¶ 23.

Speetjens and/or her associated counsel Jesse Harrington performed certain legal work in relation to Larson's potential claims against Kimsey. *See* Declaration of Martin Willougby ("Willougby Decl."), Exs. 1 and 2. The action against Kimsey was never filed.

**D.     Procedural History**

On June 24, 2005, Cynthia H. Speetjens, Frazer Davidson, P.A., T. Roe Frazer II, and John Davidson moved to compel arbitration against Larson, in her individual capacity, in the United States District Court for the Southern District of Mississippi, Case No. 05-CV-394-WHB-AGN ("Speetjens I").[5] On November 8, 2005, Judge Barbour of the United States District Court for the

---

[4] The Court notes that Plaintiffs' allegations regarding the signing of the contract are inconsistent and conclusory. For example, Plaintiffs allege: "Speetjens contacted plaintiff *Janet E. Larson, trustee*, and represented that she was leaving the firm and was the attorney most familiar with the file. She asked to take the case with her . . . . Speetjens prepared her own agreement . . . and sent it to *Janet E. Larson*. *Janet E. Larson* signed the agreement *as an individual* only." *See* FAC at ¶ 23 (emphasis added). It is not clear how Larson would know that Speetjens was contacting Larson-trustee rather than Larson-individual. Furthermore, if Speetjens contacted Larson-trustee, she must have sent the contract to Larson-trustee as well. It is not clear why Larson-individual ended up signing it. The Court does not accept as true conclusory legal allegations cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

[5] Speetjens requests the Court to take judicial notice of two complaints filed in the district court for the Southern District of Mississippi, Case Nos. 05-CV-394-WHB-AGN and 05-CV-720-WHB-JCS, and an order by Judge Barbour in one of the Mississippi actions, Case No. 05-CV-720-WHB-JCS. Speetjens Decl., Exs. F-H. A court may take judicial notice of the authenticity and existence of pleadings in other actions and orders of another court. *See U.S. v. Southern California Edison Co.*, 300 F.Supp.2d 964, 974 (E.D. Cal. 2004); *Kent v. DaimlerChrysler Corp.*, 200 F.Supp.2d 1208 (N.D. Cal.

3

Southern District of Mississippi ordered Larson in her individual capacity to submit to arbitration and issued final judgment in favor of plaintiffs (who are Defendants in this action). *See Speetjens v. Larson*, 401 F.Supp.2d 600, 610 (S.D. Miss. 2005). Judge Barbour explained that only Larson in her individual capacity could be compelled to arbitrate because only Larson in her individual capacity was named a defendant in that case. *Id.*

On June 30, 2005, Larson individually and as a trustee of the Janet E. Larson Revocable Trust A, and Marnie Near as trustee of the Janet E. Larson Insurance Trust filed the instant action against Defendants in Superior Court of the State of California for the County of San Francisco, alleging claims for legal malpractice, breach of fiduciary duty, breach of contract and fraud ("Speetjens II"). All of the claims were based on Defendants' alleged failure to file suit against Kimsey on a timely basis.[6] On August 4, 2005, Defendants removed the action to this Court. On October 28, 2005, Defendants moved for a stay of the action, pending resolution of Speetjens I. The motion sought relief based on the first–to–file rule and the policy of abstention. On November 28, 2005, following Judge Barbour's Order in Speetjens I compelling Larson in her individual capacity to arbitrate, Larson voluntarily dismissed herself in her individual capacity from this action. On January 17, 2006, Plaintiffs filed the First Amended Complaint. On January 31, 2006, this Court denied Defendants' motion to stay on the grounds that Speetjens I was resolved, but only Larson in her individual capacity was ordered to submit to arbitration, and since Larson dismissed herself in her individual capacity from this action, the action could go forward.

On December 1, 2005, Cynthia H. Speetjens, Frazer Davidson, P.A., T. Roe Frazer II, and John Davidson filed a complaint for order compelling arbitration against Larson as a trustee of the Janet E. Larson Revocable Trust A, and Marnie Near as trustee of the Janet E. Larson Insurance Trust in the United States District Court for the Southern District of Mississippi, Case No. 05-CV-

---

2002) (taking judicial notice of two state court decisions and a legal memorandum filed in a state court action on the grounds that they are public documents). Accordingly, the Court GRANTS Speetjens' request and takes judicial notice of the authenticity and existence of these documents.

[6] The statute of limitations on most of Plaintiffs' claims against Kimsey expired before they retained new counsel. The parties dispute whether the statute of limitations on Plaintiffs' fraud claim against Kimsey expired. Plaintiffs allege that the fraud claim was at least rendered valueless.

4

720-WHB-JCS ("Speetjens III"). On February 28, 2006, Judge Barbour ordered the action transferred to the United States District Court for the Northern District of California. This Court related the action to Speetjens II.

On April 18, 2006, Defendants filed the instant motion to compel arbitration or, alternatively, for immediate trial on the issue of arbitrability, pursuant to 9 U.S.C. section 4, and for stay pursuant to 9 U.S.C. section 3.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that arbitration agreements governed by the Act "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was created to "reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651 (1991) (citations omitted). Section 2 of the FAA evinces "a liberal federal policy favoring arbitration agreements, not withstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983). Thus, in creating the FAA, Congress created a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* While this body of law was meant to pre-empt state laws or policies which are contrary to the FAA, "state law is not entirely displaced under the arbitration analysis." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001). State law determines the validity, revocability or enforceability of contracts generally, and the federal substantive law of arbitrability applies to any arbitration agreement within the coverage of the Act. *International Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000).

Before considering the merits of a defense raised to avoid arbitration, the court must determine whether the issue is one for a court or an arbitrator to resolve. The Supreme Court has distinguished between three categories of challenges to arbitration provisions. *See Buckeye Check Cashing, Inc. v. Cardegna*, – U.S. –, 126 S.Ct. 1204 (2006). First, if a challenge is to the contract as a whole, it must be decided by the arbitrator. *Id.* at 1210. Second, if a challenge is specifically to

5

the arbitration provision, it must be decided by a court. *Id.* Finally, if a challenge is to a party's signatory power to the contract, it must be decided by a court.[7]

The role of a district court in determining whether to compel arbitration is limited. Section 4 of the FAA directs a district court to compel arbitration unless the making of an arbitration agreement or one party's failure to arbitrate is in question. *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993). A party cannot be required to submit to an arbitration any dispute which it has not agreed to submit. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). However, a party need not sign an arbitration agreement to be bound by it. It can agree to submit to arbitration by means other than personally signing the agreement. *International Paper*, 206 F.3d at 416. Thus, a nonsignatory of an arbitration agreement may be bound by it under ordinary contract and agency principles. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Among these principles are '(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'" *Id.* The rule is an outgrowth of the strong federal policy favoring arbitration. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986). The determination whether a nonsignatory is bound by the arbitration contract is governed by the federal substantive law on arbitrability. *Id.* at 1187; *International Paper*, 206 F.3d at 417 n.4.

If the parties are bound and the arbitration clause is implicated, the court must permit arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

## ANALYSIS

### A. Whether the Parties Are Bound by the Agreements

Defendants assert that there is a dispute whether Larson signed the Agreements with Speetjens and Frazer Davidson only in her individual capacity or both in the individual and representative capacity. Motion to Compel Arbitration ("Motion") at 8. However, even assuming

---

[7] Although the Supreme Court in *Buckeye* explicitly reserved ruling on the issue of who decided challenges to a party's signatory power to a contract, *see id.* at 1208 n.1, the Courts of Appeals cases cited in the *Buckeye* opinion have ruled that this issue is to be decided by the court. In addition, the courts following the *Buckeye* opinion have so ruled. *See, e.g., Fox International Relations v. Fiserv Securities, Inc.*, 418 F.Supp.2d 718, 724 (E.D. Pa. 2006).

that Larson-individual signed the Agreements, Defendants ask the Court to find that Plaintiffs are legally bound by the Agreements under the principles of estoppel and agency. *See id.* This issue is governed by the federal substantive law on arbitrability and must be decided by the Court. *See Letizia*, 802 F.2d at 1187; *Fox International Relations*, 418 F.Supp.2d at 724.

### *a. Equitable Estoppel*

"Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *International Paper*, 206 F.3d at 417-418. "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id*. at 418. A party should not be allowed to claim the benefit of the contract and simultaneously avoid its burdens. *Id*. "A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a direct benefit from a contract containing an arbitration clause." *Id.*

Defendants argue that Plaintiffs should be estopped from refusing to comply with arbitration clauses of the Agreements because they received a benefit under each agreement. They rely on *International Paper* and *Alliance Title Co., Inc. v. Boucher* (2005) 127 Cal.App.4th 262. In *International Paper*, a buyer of an industrial saw sued manufacturer of the saw based on a contract between the distributor and manufacturer for claims for breach of contract, rejection and breach of warranties. Manufacturer moved to stay pending arbitration based on the arbitration clause in the contract. The Fourth Circuit held that the buyer was estopped from refusing to arbitrate its dispute with the manufacturer. *Id.* at 418. The Fourth Circuit reasoned that the contract between manufacturer and distributor provided part of the factual foundation for every claim asserted by the buyer against the manufacturer. The buyer alleged that the manufacturer failed to honor the warranties in the contract, and it sought damages, revocation and rejection in accordance with the contract. Because the buyer's entire case hinged on its asserted rights under the contract, it could not seek to enforce those contractual rights and avoid the contract's requirement that any dispute arising out of the contract be arbitrated. *Id.*

In *Alliance Title*, the California Court of Appeals, applying federal substantive law of arbitrability, found that a defendant who was a nonsignatory to the arbitration agreement between plaintiff and co-defendant, could compel a plaintiff to arbitrate his claims against the defendant based on the principle of equitable estoppel.  Specifically, the court held that "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action are against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." 127 Cal.App.4th at 272.  The court further stated: "That the claims are cast in tort rather than contract does not avoid the arbitration clause." *Id*.  The court concluded that because plaintiff's claims all made reference to and presumed the existence and the validity of the employment contract between plaintiff and co-defendant, and because the co-defendant who was a signatory to the contract and the defendant who wanted to compel arbitration were both owned in part by the same entity, plaintiff's claims were "intimately founded in and intertwined with" the contract and plaintiff was equitably estopped from avoiding arbitration. *Id.* at 272-273.

Relying on *International Paper* and *Alliance Title*, Defendants argue that Plaintiffs are bound by the arbitration clauses in the Agreements because every cause of action Plaintiffs are asserting is intimately "founded in" an "intertwined with" the subject matter of the Agreements – the legal representation Defendants agreed to provide to Plaintiffs with respect to the Kimsey matter.  Motion at 11.  Moreover, Defendants argue that every cause of action specifically relies on the existence of the Agreements containing the arbitration clauses; in other words, the Agreements provide part of the factual foundation for every claim.  *Id*.  Plaintiffs' first cause of action is legal malpractice.  A legal malpractice claim requires proof of an attorney-client relationship between the parties.  The principal allegation of the paragraphs showing the formation of an attorney-client relationship between the parties is the written Agreements between Larson and Defendants.  Motion at 12.  Likewise, the second cause of action for breach of oral and implied contract in the FAC incorporates

8

and relies on the existence of the written Agreements.[8] *Id.* The remaining causes of action similarly rely on the existence of the written Agreements. Defendants provide evidence that Larson sought advice from Defendants regarding her claims against Kimsey; she was the client contact for Plaintiffs regarding all Trusts-related issues; Larson entered into the Agreements with Defendants for the purpose of bringing any claims she might have against Kimsey, including the claims relating to the Trusts; and Speetjens and/or her associated counsel Jesse Harrington performed certain legal work in relation to Larson's potential claims against Kimsey. *See* Speetjens Decl. at ¶¶ 4, 5, and 7; Willougby Decl., Exs. 1 and 2. Thus, because Larson both in her individual and representative capacity, as well as Near in her capacity as trustee of one of the Trusts, received the benefits of the Agreements, they should not be allowed to avoid the burdens of them.

In response, Plaintiffs rely on *Comer v. Micor*, 278 F.Supp.2d 1030 (N.D. Cal. 2003) and *Comer v. Micor*, 436 F.3d 1098 (9th Cir. 2006). In *Comer*, plaintiff was a participant in Micor's pension and profit sharing plans. He brought an ERISA claim against Micor, the trustees of the plans, and Smith Barney, the plans' investment advisor, with whom the trustees maintained accounts on behalf of the plans. Smith Barney moved to compel arbitration based on the arbitration clause in its investment advisor agreements with the trustees. This Court held that plaintiff was not bound by the arbitration clause, because plaintiff's right of action for breach of fiduciary duty under ERISA was distinct from that which the trustees or the plans might have either under ERISA or under the common law for breach of contract. *Comer v. Micor*, 278 F.Supp.2d 1030, 1038 (N.D. Cal. 2003). In addition, the Court held that there was insufficient evidence or legal authority to conclude that Plaintiff was a third-party beneficiary of the arbitration agreement between Smith Barney and trustees. *Id.* at 1040. Finally, the Court held that even if Plaintiff is considered a third-party

---

[8] Plaintiffs' original complaint alleged a breach of contract based on the written Agreements Larson signed. *See* Complaint at ¶ 30. Plaintiffs' FAC does not have this allegation. Defendants argue that Plaintiffs' statements in the original complaint are evidence that the Court should consider regarding the extent to which Defendants' obligations to Plaintiffs are actually based on the terms of the written Agreements. Motion at 12 n. 3. In *Huey v. Honeywell*, 82 F.3d 327 (9th Cir. 1996), the Ninth Circuit stated: "When a pleading is amended . . ., the superseded portion ceases to be a conclusive judicial admission; but it still remains a statement once made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible like any other extrajudicial admission made by a party or his agent." *Id.* at 333. Accordingly, the Court considers Plaintiffs' statements in the original complaint in its ruling on the instant motion.

9

1  beneficiary of the agreement, he cannot be compelled to arbitrate because he was not suing to
2  enforce the terms of the agreement, but instead to enforce the plans' rights vis-a-vis their fiduciaries
3  under ERISA. *Id.*

4  The Ninth Circuit affirmed this Court's ruling. *Comer v. Micor*, 436 F.3d 1098 (9th Cir.
5  2006). In doing so, the Ninth Circuit noted that the "insurmountable hurdle for Smith Barney" was
6  the lack of evidence that Comer "'*knowingly exploit[ed]* the agreement[s] containing the arbitration
7  clause[s] despite having never signed the agreement[s].'" *Id.* at 1102 (citation omitted; emphasis
8  added). The Ninth Circuit explained that "[p]rior to his suit, Comer was simply a participant in
9  trusts *managed by others* for his benefit." *Id.* (emphasis added). Thus, "Smith Barney's attempt to
10 shoehorn Comer's status as a *passive participant* in the plans" into his knowing exploitation of the
11 investment management agreements between trustees and Smith Barney failed. *Id.* (emphasis
12 added).

13 The Court finds that none of the decisions relied on by the parties are fully analogous to the
14 instant case. Nevertheless, the facts in *International Paper* are closer to the facts of this case than the
15 facts in *Comer*. First, there is a dispute whether Larson-individual or Larson-trustee entered into the
16 Agreements with Defendants. The Agreements are ambiguous as to this issue. In addition, the
17 FAC's allegations are inconsistent and conclusory as to this issue. Even assuming that Larson-
18 individual entered into the Agreements with Defendants, since Larson-individual signed the
19 Agreements, Larson-trustee was well aware of them. Despite her awareness and her close scrutiny
20 of the Agreements,[9] Larson-trustee did not object to the arbitration clause in the Agreements.
21 Larson-trustee knowingly accepted the benefits of the Agreements – Defendants' legal advice
22 regarding Plaintiffs' potential claims against Kimsey. Similarly, Plaintiff Near knowingly accepted
23 Defendants' legal advice. While she states in her declaration that she did not authorize Larson to
24 sign the Agreements and did not see a copy of the Agreements, she does not state that she was
25 unaware of the Agreements. Near had relied on Larson to form an attorney-client relationship with
26 Defendants and discuss their claims with them. In fact, all of Defendants' communications with

---

[9] Judge Barbour in Speetjens I noted that before signing, Larson gave the Agreements to her brother, an attorney, for review.

10

Plaintiffs were through Larson. Larson formed the attorney-client relationship with Defendants by entering into the Agreements with Defendants. Near asserts that an attorney-client relationship may be formed orally, rather than through a written agreement. While this is correct, it is not what happened in this case. Near did nothing to disavow the Agreements or the attorney-client relationship which they formed. Finally, Near alleged that an attorney-client relationship was created by the Agreements in the original complaint.[10] *See* Complaint, ¶¶ 23, 20.

At present, however, Plaintiffs seek to avoid the burdens of the Agreements – the arbitration requirement. Plaintiffs' entire case hinges on the attorney-client relationship created by the Agreements. Plaintiffs' claims are inextricably intertwined with the Agreements, as they are based on Defendants' alleged breach of their fiduciary duty that was created by the Agreements. They cannot seek to enforce the rights the attorney-client relationship provided them and avoid the requirement that any dispute arising out of the Agreements be arbitrated. *See NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 84 ("'No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.'") (internal citation omitted). Plaintiffs' situation is analogous to those in which courts have found equitable estoppel. *See id.* (psychiatrist's wife was bound by the arbitration clause in the psychiatrist's insurance policy because she sought and accepted benefits under the policy; specifically, the insurance company funded defense of her and her husband in the malpractice case filed against them); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315, 320-321 (4th Cir. 1988) (a plaintiff had an arbitration agreement with a subsidiary corporation; it sued the parent corporation; its claims against the parent company were based on the same facts and were inherently inseparable from the claims against subsidiary; the parent corporation was allowed to enforce the arbitration agreement); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993) (a plaintiff, a nonsignatory of the arbitration agreement, was compelled to arbitrate under the equitable estoppel principles, because it received a copy of the agreement, did not object to it, offered no persuasive reason for its inaction, and knowingly accepted the benefits of the agreement); *Letizia*, 802 F.2d at

---

[10] *See supra* at footnote 8.

11

1188 (investor had an arbitration agreement with the brokerage firm; he brought action against brokerage firm and its employees, alleging fraud and violation of federal securities laws; he was required to arbitrate his claims not only against the brokerage firm, but against the firm's employees who were nonsignatories to the agreement because all of the employees' allegedly wrongful acts related to their handling of investor's securities account). Accordingly, the Court finds that Plaintiffs are bound by the Agreements Larson signed under principles of equitable estoppel.

### *b.* *Agency Principles*

Even if the Court were to find that Plaintiffs are not bound by the Agreements under principles of equitable estoppel, the Court would nevertheless find that they are bound by the Agreements under agency principles. Nonsignatories to arbitration agreements may be bound by them under agency principles. *Comer*, 436 F.3d at 1101. "A principal is liable 'when the principal knows the agent holds himself or herself out as clothed with certain authority and remains silent.'" *NORCAL Mutual*, 84 Cal.App.4th at 78 (internal citation omitted). The existence of an agency is a question of fact and the court may examine the circumstances of the case and conduct of the parties in determining whether an agency relationship existed and whether an agent acted within the scope of his or her authority. *Inglewood Teachers Assn. v. Public Employment Relations Bd.*, 227 Cal. App. 3d 767, 780 (1991). An agency relationship may be established informally, and conduct alone can be sufficient to create such a relationship. *Malloy v. Fong*, 37 Cal. 2d 356, 372 (1951). An agent can have actual or ostensible authority. Actual authority is authority that a principal "intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal. Civ. Code § 2316. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civ. Code § 2317. The principal is liable to persons who have, in good faith, and without negligence, relied on the agent's ostensible authority to their detriment. Cal. Civ. Code § 2334. Although ostensible authority derives from the acts of the principal as opposed to the agent, the principal "need not have been in direct contact with the third party . . . ." *Meyer v. Ford Motor Co.*, 275 Cal. App. 2d 90, 102 (1969). Rather, it is sufficient that the principal act in a manner, whether intentionally or negligently, to cause the third party to reasonably believe that the agent had

12

the requisite authority to act on behalf of the principal. *Id.*

Here, the parties do not dispute that Larson had actual authority to hire Defendants to represent the Trusts. In fact, Plaintiffs alleged that she did hire Defendants to represent Plaintiffs in their claims against Kimsey. However, the parties dispute whether Larson had actual authority to sign the Agreements. At all times during their attorney-client relationship, Larson represented to Speetjens that she had authority to make decisions, and never distinguished between Larson-individual and Larson-trustee. Speetjens Decl. at ¶¶ 4, 5, and 7. While Near maintains that she has never authorized anybody, including her mother, to sign any agreements, she affirmatively asserts that she in fact had an attorney-client relationship with Defendants. *See* Declaration of Marnie E. Near in Opposition to Motion Compel Arbitration ("Near Decl."), at ¶ 4. Near alleges that she entered into agreements with Defendants by way of Larson's communications with Defendants. FAC, ¶ 21. Thus, it is clear that Near authorized Larson to enter into the agreements with Defendants. Near subsequently acted in a manner consistent with her enjoyment of the attorney-client relationship. By authorizing Larson-individual to be the sole Plaintiffs' contact with Defendants and to hire Defendants to represent Plaintiffs, Plaintiffs caused Defendants to reasonably believe that Larson individual had the requisite authority to act on their behalf. The Court finds that even if Larson-individual did not have the actual authority to enter into the Agreements, she had ostensible authority to do so. By signing the Agreements, Larson bound Plaintiffs under the agency principles. *See Letizia*, 802 F.2d at 1188 (because all of the brokerage firm employees' allegedly wrongful acts related to their handling of investor's securities account, investor had to submit to arbitration against employees under the investment agreement containing arbitration clause between investor and brokerage firm); *see also Arnold v. Arnold Corporation - Printed Communications for Business*, 920 F.2d 1269 (6th Cir. 1990) (interpreting *Letizia* to apply agency principles in binding nonsignatories-employees to the arbitration agreements).

### B.      Enforceability of the Arbitration Clause

Plaintiffs argue that even if the Court finds that they are bound by the Agreements, the Court should nevertheless refuse to compel arbitration because the arbitration clause in the Agreements is unenforceable. Opposition at 22. Specifically, Plaintiffs claim that the following provision of the

1 arbitration clause is unenforceable: "Thus, Client and our Law Firm agree that the arbitrators [sic]
2 rulings may be enforced and/or appealed in Hinds County circuit court and applicable appellate
3 courts to the same extent that a Hinds County jury verdict can be enforced and/or appealed."
4 Speetjens Decl., Ex. A at ¶ 5; Ex. B at ¶ 5. Plaintiffs assert that the arbitration awards are final and
5 binding under the FAA, therefore the expanded appeal provisions make the arbitration clause
6 invalid. Opposition at 23.

7 In response, Defendants argue that this argument is precluded by the doctrine of collateral
8 estoppel, because it was raised before and decided by the Mississippi District Court. Reply at 9
9 (citing to *Speetjens I*). Collateral estoppel "bars relitigation of issues adjudicated in an earlier
10 proceeding if three requirements are met: (1) the issue necessarily decided at the previous
11 proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended
12 with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted
13 was a party or in privity with a party at the first proceeding." *Reyn's Pasta Bella, LLC, v. Visa USA,*
14 *Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). In Speetjens I, Larson in her individual capacity argued that
15 the Agreements were unenforceable because they included expanded appeal rights. *See Speetjens*,
16 401 F.Supp.2d at 608. Judge Barbour rejected Larson's argument and held the Agreements were
17 enforceable. *Id.* at 609. Thus, the first element of collateral estoppel is satisfied. A final judgment
18 on the merits was entered in Speetjens I. *Id.* at 611. Thus, the second element is met as well.
19 Larson in her individual capacity–the party to the original proceeding–is no longer a party to this
20 action, thus, the Court must decide whether she is in privity to the remaining Plaintiffs – Larson in
21 her representative capacity and Near. Privity refers to a sufficiently close relationship between the
22 party in the earlier suit and the nonparty bringing the current suit to justify preclusion of the latter.
23 *Jones v. Bates*, 127 F.3d 839, 848 (9th Cir. 1997). Due process considerations require that the party
24 to be estopped: (1) must have had an identity or community of interest with, and adequate
25 representation by, the losing party in the first action, and (2) should reasonably have expected to be
26 bound by the prior adjudication. *Id*. With respect to the first prong, an identity of interest and
27 adequate representation exist if the prior litigation of the issue has been motivated by the same
28 underlying purposes and the original party had an incentive and opportunity to litigate the issue in

14

the manner best suited to furthering the common underlying purposes. *Id.* With respect to the second prong, the nonparty must have received actual notice at the time of the litigation that his or her interests were being litigated, or the nonparty had a financial interest and the power to control the prior litigation, or the original party could be fairly treated as acting in a representative capacity for the nonparty now being precluded. *Id.* at 849. In this case, the original party, Larson-individual, had the same underlying purpose in litigating the issue as do the instant Plaintiffs; that is all of them seek to prevent the Court from compelling arbitration. Further, Larson-individual had an incentive and opportunity to litigate the issue of unenforceability of the arbitration clause in the manner best suited to furthering this common underlying purpose. In addition, Plaintiffs had actual notice that their interests were litigated in Speetjens I, because at the time the issue was litigated in Speetjens I, Larson-trustee and Near filed the instant case against Defendants in California Superior Court. The same attorney represented Larson-individual in Speetjens I and Larson-trustee and Near in Speetjens II. Accordingly, Plaintiffs are precluded by the doctrine of collateral estoppel to relitigate the issue of expanded appeal rights in the instant action.

**C.     Waiver**

Plaintiffs also argue that Defendants waived their right to compel arbitration. Plaintiffs point out that the instant motion to compel was untimely, Defendants brought a motion to stay prior to the instant motion (albeit on different grounds), and initiated discovery. Opposition at 23-25. Plaintiffs' argument borders on frivolous and they fail to cite any authority in support of it.

Waivers of contractual rights to arbitration are not favored. *Letizia*, 802 F.2d at 1187. "'A party seeking to prove such a waiver must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" *Id.* (internal citation omitted). Here, Defendants filed a petition to compel arbitration in the Mississippi district court even before Plaintiffs filed the instant action. *See Speetjens I.* After Plaintiffs filed the instant action, Defendants moved to stay because the district court in Mississippi had not yet ruled on Defendants' motion to compel arbitration, and Defendants feared inconsistent rulings. Defendants' moving for a stay in this action was not an act inconsistent with the right to compel arbitration but was done to preserve the right.

1  This Court's denial of Defendants' motion to stay and entry of a case management scheduling order
2  presented Defendants with the Hobson's choice of refusing to conduct discovery and later being
3  prejudiced should the Court decline to compel arbitration, or proceeding with discovery and
4  potentially waiving their right to arbitration.  The fact that Defendants chose to conduct discovery,
5  under these circumstances, does not suggest that they were acting inconsistently with their right to
6  compel arbitration.  They were simply obeying the Court's orders.  Moreover, Plaintiffs have not
7  shown any prejudice resulting from Defendants' alleged delay in moving to compel arbitration.
8  Accordingly, the Court finds that no waiver has transpired.

### D. Stay of Litigation Pending Arbitration

Defendants ask the Court to stay the action pending arbitration, should the Court find the arbitration clause enforceable.  Motion at 21.  The Court's inherent power to control its docket includes the power to stay pending arbitration.  *Moses H. Cone*, 460 U.S. at 20 n. 23.  Accordingly, the Court grants Defendants' request to stay.

### CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs are bound by the arbitration clause in the Agreements under the estoppel and agency principles.  The Court also finds that Plaintiffs' argument regarding the unenforceability of the expanded judicial review provision of the arbitration clauses is precluded by the doctrine of collateral estoppel.  The Court GRANTS Defendants' Motion to Compel Arbitration.  The Court STAYS this action and the related action Speetjens III pending arbitration.  In light of the Court's order compelling arbitration and staying the action, Defendants T. Roe Frazer II and John Davidson's Motion to Dismiss [Docket No. 97] and Defendants Frazer Davidson, P.A., T. Roe Frazer II and John Davidson's Motion for Summary Judgment [Docket No. 99] are DENIED without prejudice.

IT IS SO ORDERED.

Dated: 9/1/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge